AO 106 (Rev. 04/10) Application for a Search Warrant *(Page 1)*

## UNITED STATES DISTRICT COURT
### for the
### Northern District of New York

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.    5:24-mj- 23 (TWD) |
| (1) A black Apple cellular telephone in a red case, with Baggage Check number 14052525; | ) ) | |
| (2) A gray Samsung phone with Baggage Check number 14052513; | ) ) | |
| (3) A black Samsung phone with Baggage Check number 14052532; | ) ) | |
| (4) A tan iPhone with Baggage Check number 14052530; and | ) ) | |
| (5) A black iPhone with Baggage Check number 14052531. | | |
| currently located in law enforcement custody at 19 E. Schuyler St., Oswego, NY 13126 | | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property: *(identify the person or describe the property to be searched and its given location)*:

See Attachments A-1 to A-5.

located in the ___Northern___ District of ___New York___ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(1)(A)(i) | Bringing Aliens to the United States |
| 8 U.S.C. § 1324(a)(1)(A)(ii) | Transporting Illegal Aliens |
| 8 U.S.C. § 1324(a)(1)(A)(V)(I) | Conspiracy to Smuggle Aliens |
| 8 U.S.C. § 1325 | Unlawful entry by an alien. |

The application is based on these facts:

See attached affidavit.

AO 106 (Rev. 04/10) Application for a Search Warrant *(Page 2)*

☒    Continued on the attached sheet.

☐    Delayed notice of _____ days (give exact ending date if more than 30 days):

is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Attested to by the Affiant:

_____
*Applicant's signature*

Evan Drake, Border Patrol Agent
_____
*Printed name and title*

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure via telephone.

Date:    January 22, 2024

_____
*Judge's signature*

City and State:    Syracuse, NY

Hon. Thérèse Wiley Dancks, U.S. Magistrate Judge
_____
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br>    (1) A black Apple cellular telephone in a<br>red case, with Baggage Check number<br>14052525;<br>    (2) A gray Samsung phone with Baggage<br>Check number 14052513;<br>    (3) A black Samsung phone with Baggage<br>Check number 14052532;<br>    (4) A tan iPhone with Baggage Check<br>number 14052530; and<br>    (5) A black iPhone with Baggage Check<br>number 14052531.<br>currently located in law enforcement custody<br>at 19 E. Schuyler St., Oswego, NY 13126 | Case No. 1:24-mj- |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

    I, **Evan Drake**, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

    1.    I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—four electronic devices—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

    2.    I am a Border Patrol Agent (BPA) with the United States Department of Homeland Security (DHS), Bureau of Customs and Border Protection (CBP), United States Border Patrol (USBP), and assigned to the Wellesley Island Border Patrol Station. I have been a Border Patrol Agent since August 2009. My primary duty is to assist in the prevention of illicit trafficking of people and contraband between the official ports of entry. My authority to perform this mission is articulated in the Immigration and Nationality Act, sections 235 and

287, and Title 8 U.S.C. Section 1357. These bodies of law relate to, among other things, a Border Patrol Agent's authority to interrogate any alien or person believed to be an alien, and to make an arrest of any alien who is entering or attempting to enter the United States in violation of the immigration laws. To enforce these laws, I have received training at the Federal Law Enforcement Training Center in Artesia, New Mexico in Law, Operations, Firearms, Driving Techniques, and Physical Techniques.

3.     I have investigated violations of the Immigration Nationality Act (INA) including illegal entry of aliens in violation of Title 8, United States Code, Section 1325, and the smuggling of aliens in violation of Title 8, United States Code, Section 1324. I have analyzed data and information from electronic devices and presented that data as evidence during criminal investigations.

4.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 8 U.S.C. § 1324(a)(1)(A)(i) [Bringing Aliens to the United States], 8 U.S.C. § 1324(a)(1)(A)(ii) [Transporting Illegal Aliens], and 8 U.S.C. § 1324(a)(1)(A)(V)(I) [Conspiracy to Smuggle Aliens], and 8 U.S.C. § 1325(a) [Illegal Entry] (collectively, the "Subject Offenses").], have been committed by RICARDO SALAS-MORALAS, LUIS EDUARDO OSORIO-VIVEROS, SELENI GARCIA-CRUZ, JAIR DOMINGO-CANO, and FIDEL MANUEL-FUENTES, and other persons unknown. There is also probable cause to search the electronic devices described in Attachments A-1 to A-5 for evidence of these crimes further described in Attachment B.

2

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6.      The property to be searched includes the following five electronic devices (collectively, the "**Devices**"), all currently located in law enforcement custody at 19 E. Schuyler St., Oswego, NY 13126:

    a.  a black Apple iPhone in a red case, with Baggage Check number 14052525 ("**iPhone-2525**");

    b.  a gray Samsung phone with Baggage Check number 14052513 ("**Samsung-2513**");

    c.  a black Samsung phone with Baggage Check number 14052532 ("**Samsung-2532**");

    d.  a tan iPhone with Baggage Check number 14052530 ("**iPhone-2530**"); and

    e.  a black iPhone with Baggage Check number 14052531 ("**iPhone-2531**").

7.      The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

8.      On January 1, 2024, Border Patrol Agents were working their assigned duties in Jefferson County, New York, as part of the Wellesley Island Border Anti-Smuggling Unit (WIB ASU). While patrolling the area of Philadelphia, NY, Border Patrol received information that a 2021 Chevrolet Silverado bearing North Carolina license plate JMX-3295 (the "Chevy Silverado") was traveling southbound from Malone, New York on County Route (CR) 24.

9.      In my training and experience, CR-24 is a prevalent route used by immigrant smugglers to transport individuals who cross the Canada-United States international border illegally. Border Patrol agents at the Wellesley Island Border Patrol Station have apprehended

3

numerous migrant smuggling cases that utilized CR-24 since November 2022. In each event, the vehicles had travelled long distances towards the Canada-United States International Boundary, spent a short amount of time near the border, and made a quick turnaround to start travelling back southbound.

10.     In my training and experience, Malone, New York is a common route towards known pick-up locations identified in prior smuggling cases apprehended by the Border Patrol. Smugglers commonly use these locations to illegally cross people and contraband into the United States because of its remote and rural landscape and being directly south of the large metropolitan city of Montreal, Canada. Prior arrest data, post arrest interviews, and intelligence information indicate many Mexican citizens fly into the Montreal airport from Mexico, with the sole intention of entering the United States illegally.

11.     Further information indicated that the Chevy Silverado had traveled to the northern border previously on November 18, 2023. Information indicates that the Chevy Silverado travelled on November 18, 2023, from Westfield, New York, traveled north to Malone, New York where it spent less than two hours before returning southwest back through Westfield, New York. Westfield, New York to Malone, New York is approximately 380 miles. In my training and experience, the amount of time spent by the Chevy Silverado, the distance travelled towards the international boundary, and the destination's proximity to the international border is consistent with the tactics, techniques, and procedures utilized by alien smuggling organizations. On January 1, 2024, the Chevy Silverado appeared to take a similar route to the November 18, 2023, trip and was seen coming south from Malone, New York.

12.     Record checks on North Carolina plate JMX-3295 revealed the registered owner of the Chevy Silverado was RICARDO SALAS-MORALAS with a listed address in

Monroe, North Carolina. The distance between Monroe, North Carolina and Malone, New York is approximately 936 miles. BP agents observed the Chevy Silverado as it was passing south on State Route 11 through Philadelphia, New York and heading towards Interstate 81. In my training and experience, the use of an out-of-state plate to travel a significant distance to the international border is consistent with tactics, techniques, and procedures utilized by alien smuggling organizations.

13.     On January 1, 2024, at approximately 9:25 p.m., BP agents observed the Chevy Silverado on State Route 11 southbound near Philadelphia, New York, and observed multiple people inside the vehicle and the side windows being fogged up as it passed by Philadelphia, New York. In my training and experience, fogged up windows may indicate multiple people inside of a vehicle. Based on their observations and prior information received, BP agents conducted a vehicle stop of the Chevy Silverado.

14.     BP agents approached the vehicle and observed five individuals inside. BPA Baize identified himself as a United States Border Patrol Agent and questioned the driver as to his citizenship.  The driver, later identified as RICARDO SALAS-MORALAS, stated he has a U-Visa, allowing him to legally live and work in the United States. BP agents then asked the front seat passenger, later identified as LUIS EDUARDO OSORIO-VIVEROS as to his citizenship. OSORIO stated that he was a Mexico citizen, without the immigration documents allowing him to reside in, be in or work in the United States. The remaining occupants of the Chevy Silverado, later identified as SELENI GARCIA-CRUZ, JAIR DOMINGO-CANO, and FIDEL MANUEL-FUENTES, were also each determined to be citizens and nationals of Mexico without any legal immigration documents allowing them to be in, reside or work in the United States legally, and each appeared to have wet clothing. At approximately 9:32 p.m.,

5

Border Patrol placed all occupants of the Chevy Silverado, including SALAS, under arrest and arranged for transportation back to the Wellesley Island Border Patrol Station for further processing.

15.      During the initial encounter of the traffic stop, a BPA observed that OSORIO had a cellular phone in his hand and was instructed to place the phone on the dashboard of the vehicle.  OSORIO replied, "my phone?" in Spanish, and placed the phone on the dashboard. That phone was later identified as the **iPhone-2531**, one of the **Devices**.

<u>Interview of SALAS</u>

16.      At approximately 10:46 a.m., on January 2, 2024, after being re-advised of his *Miranda* rights, in the Spanish language, SALAS acknowledged and signed a waiver stating that he understood his rights and agreed to answer questions without an attorney present. SALAS stated he was born in Mexico and is a citizen of Mexico. SALAS stated he is the registered owner of the vehicle that was pulled over. SALAS stated he lives in North Carolina but has been working near Buffalo, New York, doing granite installation. SALAS stated he was traveling in northern NY to "see" the area.  SALAS stated he saw three people on the side of the road around 7:00 p.m. and picked them up because they looked cold. SALAS stated he picked up one person further up the road for the same reason.   SALAS stated that the passengers he picked up did not talk at all once picked up. SALAS stated that he did not know where he was going to take them. SALAS stated eventually he would have told them to get back out of vehicle. SALAS stated he knew they were all Mexican because of their black hair. SALAS stated he never had contact prior to picking them up. SALAS stated that they were going to give him gas money.

6

17.     SALAS provided consent to search his phone, which was identified as a black Apple cellular telephone in a red case (the **iPhone-2525**). The phone number associated with the device was 980-205-4977.

Interview of MANUEL-FUENTES

18.     At approximately 8:29 a.m., on January 2, 2024, after being re-advised of his *Miranda* rights, in the Spanish language, MANUEL-FUENTES acknowledged and signed a waiver stating that he understood his rights and agreed to answer questions without an attorney present. MANUEL-FUENTES stated he was born in Mexico and is a citizen of Mexico. MANUEL-FUENTES stated on or about January 1, 2024, he and his wife, GARCIA, drove for about 5 hours towards Montreal, Canada and were dropped off in a small town near the Canadian-United States border. MANUEL-FUENTES stated that they followed DOMINGO, who was dropped off with them from the car, across the border because DOMINGO was sent a map on his phone. MANUEL-FUENTES stated they knew it was illegal to cross the border the way they did.  MANUEL-FUENTES stated they were instructed by phone to hide in brush once they arrived at pickup location so that police would not see them.  MANUEL-FUENTES stated they got into the Chevy Silverado at around 8:00 pm on January 1, 2024. MANUEL-FUENTES stated that he, GARCIA, and DOMINGO got into the Chevy Silverado that already had two people inside. MANUEL-FUENTES positively identified RICARDO SALAS-MORALAS via photograph as the driver of the vehicle. MANUEL-FUENTES stated that either his brother-in law or sister paid $8,000 for GARCIA and himself to be smuggled across the border illegally.

19.     While conducting the interview, BPA obtained consent from MANUEL to search his cellular phone, which was identified as the **iPhone-2530,** a tan iPhone with Baggage

7

Check number ending 2530. During a preliminary search of MANUEL's **iPhone-2530** on consent, Border Patrol located an electronic communication chat on the application WhatsApp between the user of the iPhone-2530 (MANUEL) and phone number 412-884-1932. The chat messages were in Spanish language, but a rough translation of a few excerpts from the chat is provided below:

| Time on 1/1/2024 | Sender | Original Message in Spanish | Translation |
|---|---|---|---|
| 4:57 PM | 412-844-1932 (El Flako) | Hey | Hey |
| 4:58 PM | 412-844-1932 (El Flako) | Soy el que los va a recoger | I'm the one picking you up |
| 4:58 PM | **iPhone-2530 (Manuel)** | Aun nos falta | We still have some to go |
| 4:59 PM | 412-844-1932 (El Flako) | Mandame tu ubicacion en tiempo real | Send me your location in real time |
| 5:00 PM | 412-844-1932 (El Flako) | Ya empezaron a caminar? | Did you start to walk? |
| 5:10 PM | **iPhone-2530 (Manuel)** | [Live location share image] | [Live location share image] |
| 5:11 PM | 412-844-1932 (El Flako) | Cualquier cosa que veas avisame | Whatever you need let me know |
| 5:25 PM | 412-844-1932 (El Flako) | Si el GPS se Vuelve loco usa la brujula todo sur | If the GPS goes crazy, use the compass all the way south |
| 5:53 PM | 412-844-1932 (El Flako) | [Missed voice call] | [Missed voice call] |
| 5:56 PM | 412-844-1932 (El Flako) | Animo | Cheer up / Keep going |
| 5:56 PM | 412-844-1932 (El Flako) | [Message was deleted] | [Message was deleted] |
| 6:03 PM | 412-844-1932 (El Flako) | [Call failed] | [Call failed] |
| 6:11 PM | **iPhone-2530 (Manuel)** | Llegamos | We arrived |
| 6:12 PM | 412-844-1932 (El Flako) | Ok | Ok |
| 6:12 PM | **iPhone-2530 (Manuel)** | [Live location share] | [Live location share] |
| 6:12 PM | **iPhone-2530 (Manuel)** | En que tiempo | In what time |
| 6:13 PM | 412-844-1932 (El Flako) | En cuanto este a 10 min de llegar yo te digo y te me pones | As soon as I'm 10 minutes away from arriving I'll tell you and you'll |

| | | pilas cerca de la Carretera | get going near the highway |
|---|---|---|---|
| 6:13 PM | 412-844-1932 (El Flako) | Y trada de ser discrete en donde te localices | And try to be discreet where you are located |

20.     In my training and experience, the above chat communication indicates that the user of the iPhone-2530 intended to cross the border and that the user of phone number 412-884-1932 was going to pick him up by utilizing the live location feature, and advised to be discreet and to run to the vehicle when it arrives. In my training and experience, the phone number 412-884-1932 is associated with one of the conspirators involved in the alien smuggling operation that involved MANUEL, DOMINGO, and GARCIA's illegal entry in the United States.

21.     At the conclusion of the interview with MANUEL, law enforcement used a phone to call to 412-844-1932, associated with "El Flako," the person who MANUEL was communicating with. Upon dialing that number, the **iPhone-2531**, the phone that OSORIO had identified to be his device, began to rang. Law enforcement therefore has probable cause to believe that "El Flako" is OSORIO.

22.     Based on the fact that SALAS's phone was determined to be associated with call number 980-205-4977, which was not the number associated with "El Flako" with whom MANUEL was communicating to transport him once he reached the United States, law enforcement has probable cause to believe that the phone number associated with "El Flako" was used and controlled by OSORIO, the passenger in the vehicle with SALAS when MANUEL arrived at the Chevy Silverado on January 1, 2024.

<u>Interview of DOMINGO</u>

23.     At approximately 9:40 a.m., on January 2, 2024, after being re-advised of his *Miranda* rights, in the Spanish language, DOMINGO acknowledged and signed a waiver

9

stating that he understood his rights and agreed to answer questions without the presence of an attorney. DOMINGO stated he was born in Mexico and is a citizen of Mexico. DOMINGO stated he was living in Livingston, Ontario for 18 months and was working in packaging. DOMINGO stated that, using his phone, he joined a group on the social media messaging application WhatsApp and that members of the WhatsApp group provided information about how to cross the border illegally. DOMINGO stated an individual on WhatsApp guided him from start to finish and wanted $3,000 for his assistance in helping DOMINGO cross the border. DOMINGO stated that the individual sent him a map on his cell phone showing where to meet the pickup vehicle in the United States. DOMINGO stated he was picked up in Ontario, then traveled to Toronto where GARCIA and MANUEL-FUENTES were picked up and travelled to the border with him. DOMINGO stated the driver of the vehicle in Canada told GARCIA, MANUEL-FUENTES, and himself to walk straight across the United States-Canada border once they were dropped off. DOMINGO stated he believed he was in contact with one of the drivers while following the map into the United States. DOMINGO stated when the vehicle arrived at the location there was two people in the vehicle already. DOMINGO positively identified Ricardo SALAS-Moralas via photograph as the driver of the vehicle. DOMINGO stated he was guilty of crossing the border illegally.

24.     DOMINGO provided consent to review his two phones, which he identified as a gray Samsung phone (the **Samsung-2513**) and a black Samsung phone (the **Samsung-2532**).

Other Interviews

25.     Border Patrol attempted to speak with Luis Eduardo Osorio-Viveros, but he did not agree to speak with law enforcement.

26.     Border Patrol did not speak with Seleni GARCIA-Cruz.

## Background on Alien Smugglers and Telephone Use

27.     Based on my training and experience in this and other cross-border criminal investigations I have been involved with, including individuals entering the United States illegally, individuals crossing the border illegally will often communicate and coordinate with someone to pick them up once in the United States or to inform them that they successfully crossed the border via cellular telephone. Individuals involved in crossing the border illegally often use a cellular telephone's GPS function to search for and map out potential crossing and pickup locations and to navigate to such places. An additional function of cellular telephones that can be utilized by individuals crossing illegally includes the camera, individuals will often take photos of where they are crossing the border illegally.

28.     Additionally, smugglers often communicate with each other using cellular phones and downloaded applications to coordinate smuggling events. Smartphones, such as the Devices, can also be used to access social media. Based on my training, knowledge, and experience of alien smuggling, I know that social media platforms, such as Facebook and WhatsApp, are often used by smugglers to find customers and for communication between smugglers and aliens illegally entering the United States.

29.     The Devices are currently in the lawful possession of the United States Border Patrol and have been since January 1, 2024.  I seek this warrant to be certain that further examination of the Devices will comply with the Fourth Amendment and other applicable laws.

***

30.     In light of the foregoing, there is probable cause to believe that SALAS owned and controlled the **iPhone-2525**, that OSORIO owned and controlled the **iPhone-2531**, that

MANUEL-FUENTES owned and controlled the **iPhone-2530,** and that DOMINGO-CANO owned and controlled the **Samsung-2513** and the **Samsung-2532**. There is also probable cause to believe that each of these subjects of the investigation stored information and evidence related to a conspiracy to bring and transport aliens into and within the United States, and related to SALAS and OSORIO's intent to bring and transport MANUEL-FUENTES, DOMINGO, and GARCIA on January 1, 2024.

31.    There is therefore probable cause to believe that the Devices contain evidence of the crimes under investigation, including but not limited to (i) electronic communications, such as emails, call logs, text messages, chats, and social media messaging; (ii) location information; and (iii) photos, videos, ledgers, contacts, and other documents, saved to or stored on the devices related to alien smuggling and transporting.

## TECHNICAL TERMS

32.    Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and

12

storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to

13

store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.   GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.   PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer

14

software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

33. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at https://www.apple.com/iphone/ and https://www.samsung.com/us/smartphones/ for Apple iPhones and Samsung smartphones respectively, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA and can access the Internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

34. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

15

35.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how each Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on each Device because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

16

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f. I know that when an individual uses an electronic device to conspire to smuggle aliens, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type, such as conspiracy, may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

36.     *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of each Device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

37.     *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

17

## CONCLUSION

38.     I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of each Device described in Attachments A-1 to A-5 to seek the

items described in Attachment B.

Attested to by the Affiant:

Evan Drake
Border Patrol Agent
United States Border Patrol

I, the Honorable Thérèse Wiley Dancks, United States Magistrate Judge, hereby acknowledge that
this affidavit was attested to by the affiant by telephone on January 22, 2024 in accordance with
Rule 4.1 of the Federal Rules of Criminal Procedure.

Hon. Thérèse Wiley Dancks
United States Magistrate Judge

## ATTACHMENT A-1

### Property to be Searched

The property to be searched is a black Apple iPhone in a red case, with Baggage Check number 14052525 ("Device"). The Device is currently located at 19 E. Schuyler St., Oswego, NY 13126. A photograph of the Device is provided below:



This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

1

## ATTACHMENT A-2

### Property to be Searched

The property to be searched is a gray Samsung phone with Baggage Check number 14052513 ("Device"). The Device is currently located at 19 E. Schuyler St., Oswego, NY 13126. A photograph of the Device is provided below:



This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

1

## ATTACHMENT A-3

### Property to be Searched

The property to be searched is a black Samsung phone with Baggage Check number 14052532 ("Device"). The Device is currently located at 19 E. Schuyler St., Oswego, NY 13126. A photograph of the Device is provided below:



This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

1

## ATTACHMENT A-4

### Property to be Searched

The property to be searched is a tan iPhone with Baggage Check number 14052530 ("Device"). The Device is currently located at 19 E. Schuyler St., Oswego, NY 13126. A photograph of the Device is provided below:



This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

1

## ATTACHMENT A-5

### Property to be Searched

The property to be searched is a black iPhone with Baggage Check number 14052531 ("Device"). The Device is currently located at 19 E. Schuyler St., Oswego, NY 13126. A photograph of the Device is provided below:



This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

1

## ATTACHMENT B

### Particular Things to be Seized

1.    All records on the Device described in Attachment A that relate to violations of 8 U.S.C. § 1324(a)(1)(A)(i) [Bringing Aliens to the United States], 8 U.S.C. § 1324(a)(1)(A)(ii) [Transporting Illegal Aliens], and 8 U.S.C. § 1324(a)(1)(A)(V)(I) [Conspiracy to Smuggle Aliens], and 8 U.S.C. § 1325(a) [Illegal Entry], concerning RICARDO SALAS-MORALAS, LUIS EDUARDO OSORIO-VIVEROS, SELENI GARCIA-CRUZ, JAIR DOMINGO-CANO, and FIDEL MANUEL-FUENTES, and other persons unknown, including:

   a.  Communications with aliens and conspirators regarding the transportation and bringing of aliens;

   b.  Any information related to the facilitation or smuggling of individuals into the United States;

   c.  Any information of other smuggling events involving SALAS-MORALAS or OSORIO-VIVEROS;

   d.  Any information of other smuggling events involving a 2021 Chevrolet Silverado bearing North Carolina license plate JMX-3295

   e.  Any information of other smuggling events involving or the identity of an individual using phone number 412-844-1932 with alias "El Flako";

   f.  Any information related to the facilitation of an alien's illegal entry into the United States;

   g.  Any information related to or identifying those who assisted in facilitating an alien's illegal entry into the United States;

h. Any information relating to the smuggling of aliens into the United States including communications between OSORIO and/or SALAS and other smugglers;

i. Any information recording or detailing the location, schedule, and travel of any alien while coming to or being in the United States;

j. any information recording the schedule or travel, such as GPS location information, of OSORIO and/or SALAS while going to the United States-Canada border, and coming back from transporting aliens into the United States, including on January 1, 2024;

k. Types, amounts, and prices of aliens smuggled;

l. Any information related to origins of aliens (including names, addresses, phone numbers, or any other identifying information);

m. All hotel invoices, records related to the rental of motor vehicles, and train ticket records;

n. All bank records, checks, credit card bills, account information, and other financial records.

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

3